**SAVE MORE OF GARY, INC.,**
Plaintiff-Appellant,

v.

**UNITED STATES of America,**
Defendant-Appellee.

No. 18374.

United States Court of Appeals,
Seventh Circuit.

May 3, 1971.

Rehearing Denied June 21, 1971.

Sidney M. Libit, Libit, Lindauer & Henry, Chicago, Ill., for plaintiff-appellant; Robert M. Gray, Chicago, Ill., of counsel.

Alan S. Rosenthal, James C. Hair, Attys., Dept. of Justice, Washington, D. C., William C. Lee, U. S. Atty., Fort Wayne, Ind., William D. Ruckelshaus, Asst. Atty. Gen., Alfred W. Moellering, U. S. Atty., Washington, D. C., for defendant-appellee.

Before SWYGERT, Chief Judge, KNOCH, Senior Circuit Judge and KERNER, Circuit Judge.

KNOCH, Senior Circuit Judge.

Plaintiff-appellant, Save More of Gary, Inc., filed its complaint in the United States District Court for judicial review of administrative action taken by the Department of Agriculture disqualifying plaintiff from participation in the Food Stamp Program for 30 days as a consequence of a finding that plaintiff had violated certain provisions of the Food Stamp Act of 1964 and Food Stamp Regulations.

Plaintiff now appeals from the District Court's grant of the government's motion for summary judgment, 309 F. Supp. 39.

The Act, Title 7 U.S.C. § 2011 et seq., authorizes the Secretary of Agriculture to formulate and administer a food stamp program under which eligible households are issued coupons which are to be used solely to purchase food from retail food stores which have been approved for participation in the program, § 2013(a). Section 2012(b) defines food for purposes of the act as excluding alcoholic beverages, tobacco, foods identified on the package as imported, and meat and meat products which are in fact imported.

Pursuant to the Act, the Secretary has issued regulations which require, 7 C.F.R. Part 1602.2(b), that coupons be accepted by authorized retail food stores only in exchange for eligible foods. That same section provides that acceptance of coupons for meat or meat products which are labeled, or which can be identified, as imported when delivered to the retail store or to a central warehouse, distribution or meat fabricating facility operated by the food retailer shall be deemed accepted with knowledge of such importation. Other food products clearly identified on the package as imported are not to be exchanged for coupons.

In addition change is to be made in uncanceled and unendorsed coupons valued at 50¢ previously accepted for eligible foods. If change in an amount of less than 50¢ is required, the customer at his choice may pay the difference in cash or receive credit in that amount for future purchases, 7 C.F.R. 1602.2(d). While this appeal was pending, plaintiff filed as additional authority a letter from the Regional Director, U. S. Department of Agriculture, Food and Nutrition Service for the Midwest Regional Office at Chicago, announcing issuance of new $5 coupons in addition to the continuing $2 and 50¢ coupons and a change in regulations whereby a customer may be given change in cash in amounts up to and including 49¢.

In oral argument plaintiff contends that this new notice underlined the difficulties of merchants dealing with the program and made possible some of the very transactions for which plaintiff was being penalized, e. g., the customer who now received 49¢ in cash could use that to buy ineligible non-food items.

Violators of the Act or regulations may be disqualified for further participation. The regulations provide for opportunity to submit information, explanation or evidence concerning alleged non-compliance prior to final determination by the Consumer and Marketing Service of the Department of Agriculture, which initiates the proceedings with a letter specifying the charges. This letter, the response of the recipient, plus any other information available is considered by the Director, Food Stamp Division, who then makes his determination, 7 U.S.C. § 2020, 7 C.F.R. 1602.6. There is provision for a review by the Food Stamp Review Officer, 7 C.F.R. 1603.2, at which a personal appearance may be had and further written data may be submitted.

Section 13 of the Act (7 U.S.C. § 2022) provides for a trial de novo in the District Court to determine the validity of the questioned administrative action.

It is plaintiff's position that the District Court erred in concluding that the Department followed a regular procedure which complied with the law, that its findings were supported by substantial evidence, that its penalty was not unduly harsh and that issues raised by plaintiff were immaterial and did not operate in mitigation.

The defendant's motion for summary judgment was supported by an abundance of documentary material including affidavits, contemporary reports, letters and memoranda in addition to depositions.

Plaintiff's application to participate in the program, signed by its president, states that he had read and understood

listed pertinent regulations which were included in material given him at a retailer education meeting, of which he acknowledged receipt in writing. The application stated that he understood authorization might be revoked for violation of these regulations.

In the course of several visits Food Stamp Program representatives observed certain violations which were explained to plaintiff's officers and employees at the time and followed up in written notices.

In February 1967, the Department's Inspector General conducted an investigation for compliance which resulted in reports of deliveries of non-eligible items for food coupons and failures to give 50¢ coupons in change (offering only credit slips good solely in plaintiff's market for amounts in excess of 50¢). These incidents were described in the depositions.

On April 19, 1967, plaintiff's president was sent a letter giving him full details on each of these instances including the name of plaintiff's checker, the name and description of the individual items and the amounts involved.

Plaintiff's treasurer replied orally in person (followed by a letter) denying knowledge of ineligible sales, admitting issuance of credit slips for sums larger than 49¢, but stating he had been conducting and was continuing instruction for the employees. He and his attorney said each employee signed an acknowledgment that the operations were understood. The treasurer indicated that there was no wilful violation.

The acting Midwest District Director, on a finding that violations were due to inadequate supervision and failure to provide facilities and instruction to assure compliance, recommended a 60-day disqualification. On review, the Director of the Food Stamp Division cut that to 30 days in recognition of plaintiff's immediate preventive action.

Plaintiff's attorneys requested administrative review, and submitted in writing at length and in detail the facts supporting plaintiff's view that the disqualification, with its serious attendant economic results, was unduly harsh for non-deliberate violations. There was an informal meeting with the Food Stamp Review Officer. Wholesale Grocers Association of Chicago and Illinois submitted a letter on plaintiff's behalf.

The Food Stamp Review Officer noted that the violations had not been actually denied, that prior educational visits had been made, that the numbers of violations and checkers involved in the test purchases were serious, indicating that prudent controls and supervision were lacking. He also pointed out that five other stores, four on the same street as plaintiff, had been disqualified for periods from 30 days to 6 months and that more lenient treatment of plaintiff would be inequitable.

Plaintiff's suit in the District Court followed.

■ We find no merit in plaintiff's assertion that the Department's Order was arbitrary or capricious. Plaintiff contends that an *ex parte* in camera investigation resulted in a letter which allowed plaintiff only to submit information whereupon a decision was made on the record, consisting in large part of affidavits, without any proper hearing, confrontation of witnesses, and cross-examination.

The Act, however, does not provide for an evidentiary hearing at the administrative level.

Plaintiff particularly remarks that the affidavits and depositions show no determination as to how the items were marked although some items are ineligible only if clearly marked as imported. Plaintiff sees the procedure as manifestly unfair because inspectors disguised as customers intentionally "sabotaged" the plaintiff's program. Unlike regular food stamp customers who are carefully instructed as to eligible items and who identify themselves before checkout, plaintiff says the inspectors were untrained laymen who deliberately tried to purchase ineligible items choosing those

most difficult to identify, commingling them with eligible items and never orally identifying themselves as food stamp customers.

The fact is that plaintiff's checkers were presented with a series of opportunities to apply the regulations and in a significant number of instances failed to do so.

Plaintiff analyzes the evidence provided by the affidavits and depositions and argues that gaps in the proof exist, e. g., that clear marking was not shown on such items as did require marking to be ineligible. Plaintiff similarly contends that summary judgment was not justified because genuine factual issues exist, e. g., whether violations had been established by competent, probative and substantial evidence.

But implicit in the whole series of letters to the Food Stamp Review Officer, which were exhibits in the case, is an admission that the violations in fact did occur. There is a wealth of material offered in explanation and mitigation, but no clear denial of the violations. The District Court was thus left only with the disposition of legal issues.

Plaintiff argues that the evidence shows it did provide a high level of training as indicated by employees' knowledge of regulations when interviewed by defendant's agents after the irregular transactions and that plaintiff had no reason to suspect its personnel were not following instructions; that plaintiff's good faith was shown by its substantial efforts to effect compliance after the reports of violations. Evidently these factors were considered in cutting the suspension period to 30 days.

Plaintiff also contends it did not receive the de novo trial to which it was entitled, citing Landslide Foods, Inc. v. United States, N.D.Ill. decided June 20, 1968 (#67 C 1797) where the government was apparently required to prove that violations had occurred.

Plaintiff would distinguish Marbro Foods, Inc. v. United States, N.D., Ill., 1968, 293 F.Supp. 754, on which the District Court relied, on the ground that the plaintiff there admitted all material allegations and argued only mitigating factors and excessiveness of penalty. In the light of plaintiff's letters mentioned above, however, we see no distinguishing factors here.

Plaintiff sees error in failure to consider such mitigating factors as plaintiff's limited experience with the program, the "basic necessity" and inexpensive character of the ineligible items sold, the number of ineligible items sought to be bought which plaintiff's employees did note and refuse, the fact that serious irregularities such as whiskey and cigarettes given for stamps did not occur.

However, after 9 months' experience with the program not only were items sold for coupons which plaintiff says were difficult to identify as imported, such as Portuguese sardines and Paraguayan corned beef, but also non-food items like beer, soap, plastic wrap and wash cloths.

■ Plaintiff would also have us consider its special problems arising from unionization, which plaintiff says affect supervision, and the severe economic impact attendant on suspension, as justifying treatment different from that meted out to other stores, especially as plaintiff feels it is clear that no penalty is needed to ensure plaintiff's ready compliance with regulations in the future, all of which factors, plaintiff asserts the Department has disregarded. The Act however makes no provision for such mitigating factors to nullify a violation, although clearly these aspects were considered in determining the penalty.

■ Plaintiff complains that the District Judge unduly limited the scope of judicial review, determining merely whether the agency's decision was valid. But the Act states, in § 13, that the suit in the District Court shall be a trial de novo in which the Court shall determine the validity of the questioned administrative action in issue.

We have considered with care the various arguments advanced by plaintiff and have studied the authorities cited. We conclude that the ruling of the District Court must be affirmed.

Affirmed.