**T. L. SMITH**

v.

**UNITED STATES of America.**

**Civ. A. No. 19634.**

United States District Court,
W. D. Louisiana,
Monroe Division.

April 24, 1975.

William H. Hallack, Jr., Boles, Mounger & Hallack, Monroe, La., for plaintiff.

Donald E. Walter, U. S. Atty., and Leven H. Harris, Asst. U. S. Atty., Shreveport, La., for the Government.

## OPINION

DAWKINS, Senior District Judge.

Plaintiff, T. L. Smith, d/b/a T. L. Smith's Store, Oak Ridge, Morehouse Parish, Louisiana, was authorized to redeem food stamps issued pursuant to the Food Stamp Act, Public Law 88–525, Section 2, August 31, 1964, 78 Stat. 703, 7 U.S.C. § 2011 et seq.

By letter dated November 15, 1973, Larry Rose, Food Stamp Review Officer, advised Smith that a pending one year period of disqualification of the Smith store from participation in the food stamp program had been sustained and that the period of disqualification would begin to run fifteen days after receipt of the letter.

Plaintiff then instituted this action on November 30, 1973, seeking judicial review of the administrative disqualification. After a December 10, 1973, hearing before this Court, we entered an order staying the Food Stamp Review Officer's order pending a trial *de novo* as to the propriety *vel non* of the disqualification of T. L. Smith's Store. On March 18, 1975, a nonjury trial was held.

Based upon the evidence adduced at trial, we make the following findings of fact:

(1) On December 11, 1972, T. L. Smith accepted food coupons in exchange for one container of "Aqua Velva" after-shave lotion, one container of "Faultless Spray Starch," two rolls of Scott Paper Towels, one package of Northern Paper Napkins, one pint of Beacon "Mop and Glow," one container of seven-inch Penn scissors, one Butterick dress pattern, and twenty "Sta-Rite" hair curlers.

(2) On December 11, 1972, T. L. Smith also accepted food coupons in exchange for one container of LeMur hair spray, one roll of Anaconda aluminum foil, one "Chore Girl" copper cleaner, ten "SOS" pads, one container of contact paper, two 9 x 1¼ inch Comet pie pans, one 8 x 8 x 2 Comet cake pan, two Westinghouse red light bulbs, one box "Double Glo" aluminum icicles, one set of earrings, and one crocheted acrylic hat.

(3) On or about December 13, 1972, T. L. Smith accepted food coupons in exchange for two Regal receiving blankets, two novelty knit baby gift sets, one Storktex baby blanket, one container of zinc oxide ointment, and ten packages of "Kool" cigarettes.

(4) On December 13, 1972, T. L. Smith accepted food coupons in exchange for two pairs of Recall panty hose, two Freud satin pillow cases, one pair of Polykins slippers, one Cannon fitted bed sheet, one Cannon flat bed sheet, one Waltz night gown, one box Stewart-Hall stationery, six Sheffield-style steak knives, ten packages of "Winston" cigarettes, and one Timex self-winding watch.

We now consider the law governing this action.

The Food Stamp Program was created by the Food Stamp Act, Pub.L. 88–525, § 2, August 31, 1964, 78 Stat. 703, 7 U.S.C. § 2011 et seq. Under that statute the Secretary of Agriculture is authorized to issue "such regulations . . . as he deems necessary or appropriate for the effective and efficient administration of the food stamp program." 7 U.S.C. § 2013(c). Subchapter C—Food Stamp Program, 7 C.F.R. 270, et seq., contains the regulations issued by the Secretary.

The general purpose of the food stamp program is to "permit low-income households to purchase a nutritionally adequate diet through normal channels of trade." 7 C.F.R. 270.1(a). Under the program, the head of an eligible household may purchase food coupons at a

discount below their face value and exchange them at face value for "eligible food" at an authorized retail food store. "Eligible food" is defined as "any food or food product for human consumption except alcoholic beverages and tobacco . . . ."

A retail grocer who desires to participate in the food stamp program "[must file] an application with FNS [Food and Nutrition Service], in such form as FNS may prescribe. 7 C.F.R. 272.1(a). "Upon approval, FNS [issues] a nontransferable authorization card to the firm. Such authorization card [must] be retained by the firm until superseded, surrendered, or revoked as provided [by regulations]." 7 C.F.R. 272.1(d). "Any authorized retail food store . . . may be disqualified from further participation in the program by the FNS for a reasonable period of time, not to exceed 3 years, as FNS may determine, if such firm fails to comply with the Food Stamp Act or [regulations pertaining to that Act] . . . ." 7 C.F.R. 272.-6(a).

Disqualification of a retail grocer follows a definite procedure as set forth in 7 C.F.R. 272.6, 272.8, and Part 273. Disqualification travels the following path:

I. Letter of Charges, 7 C.F.R. 272.6. A firm considered for disqualification is sent a letter of charges specifying violations and is allowed 10 days to respond.

II. Disqualification, 7 C.F.R. 272.6. After consideration of the letter of charges, the response and any other available information, a determination of disqualification is made by the Director, Food Stamp Division, and notice is sent to the firm.

III. Request for Review, 7 C.F.R. 272.6. A disqualified firm has 10 days after notice to file a written request for review. Filing of this request for review automatically stays the disqualification pending disposition of the request for review. 7 C.F.R. 272.8.

IV. Administrative Review, 7 C.F.R. Part 273. The Food Stamp Review Officer shall make a determination based on: (1) Information submitted by the Director, (2) Information submitted by the firm, and (3) Such additional information, in writing, as may be obtained by such officer from any other person having relevant information. He may (a) sustain disqualification, (b) reduce the term of disqualification, (c) direct that an official warning letter be sent in lieu of disqualification, or (4) reverse the determination of disqualification. Notice of his determination is sent to the firm by certified mail. 7 C.F.R. 273.8.

V. Judicial Review, 7 C.F.R. 273.10. The firm has 30 days from service of the notice of determination by the Review Officer to file a complaint seeking judicial review. The Court may, on application, stay the disqualification pending disposition of the judicial review. A trial de novo is held by the Court to determine the validity of the disqualification.*

Judicial review under 7 U.S.C. § 2022 and 7 C.F.R. 273.10 poses several problems. Some of the issues considered by the courts have been: (1) Who has the burden of proof? (2) What is the burden of proof? (3) What is the scope of judicial review? Does the Court have the power to modify a validly imposed sanction? We will consider these issues seriatim.

* If the request for review or the Complaint for judicial review are not filed timely, the disqualification becomes final. 7 C.F.R. 272.6(d) and 273.10(a).

## BURDEN OF PROOF

In J. L. Saunders, Inc. v. United States, 52 F.R.D. 570, 573 (E.D.Va., 1971), the Court discussed many of the problems of judicial review and concluded:

"I am of the opinion that the parties (a) are not entitled to a trial by jury, (b) by a trial de novo, plaintiff is not limited to the evidence presented at the administrative hearing, (c) Saunders will proceed as plaintiff to show he has been improperly barred from participation in the Food Stamp Program, and when shown, (d) the United States will have the burden of showing good cause for disqualifying Saunders."

Thus, *Saunders* stands for the proposition that the plaintiff in a petition for judicial review has the burden of proving improper disqualification, whereupon the burden shifts to the United States to show good cause for such disqualification. We are in accord with that holding.

## SCOPE OF JUDICIAL REVIEW; POWER OF COURTS TO MODIFY A VALIDLY IMPOSED SANCTION

The courts also have considered on several occasions the scope of judicial review. In the case of Marbro Foods, Inc. v. United States, 293 F.Supp. 754 (N.D.Ill., 1968), the Court stated:

" . . . *The scope of judicial review* for administrative decisions made under the Food Stamp Program *was limited by Congress to a determination* as to *whether the agency's decision is valid.* Title 7, U.S.C.A. § 2022. *Findings of an administrative agency* are to be *accepted* upon judicial review *unless* they are *unsupported by substantial evidence.* O'Leary v. Brown-Pacific-Maxon, Inc., et al., 340 U.S. 504, 71 S.Ct. 470, 95 L.Ed. 483 (1951)." (Emphasis supplied.)

See also Martin v. United States, 459 F. 2d 300 (6th Cir., 1972); Eckstut v. Hardin, 363 F.Supp. 701 (E.D.Pa.,

1973); Farmingdale Supermarket, Inc. v. United States, 336 F.Supp. 534 (N.J., 1971), and Save More of Gary, Inc. v. United States, 309 F.Supp. 39 (N.D.Ind., 1970), affd., (7th Cir.) 442 F.2d 36. We hold that an administrative decision under the Food Stamp Act cannot be overturned by a reviewing Court where that decision is supported by substantial evidence.

Plaintiff here argues that the decision of the Food Stamp Officer in this case is not supported by substantial evidence. We must disagree.

The evidence adduced by the government consisted of testimony of Robert White, an investigator with the Department of Agriculture, and Larry and Emma Moore, two investigative aides employed by White to assist in the investigation of the T. L. Smith Store. Except for the testimony of Mr. and Mrs. Smith and their daughter that the violations charged never occurred, plaintiff offered no proof that they did not sell ineligible items for food stamps. We find that the testimony of the government's witnesses was wholly credible; on the other hand, we cannot believe the testimony of any of plaintiff's witnesses. For example, Mr. Smith testified that he made credit sales to food stamp customers who allegedly would pay their bills in cash upon receipt of their next welfare check. Nevertheless, he failed to produce any books or records to substantiate this.

The evidence is clear that Smith, in operating his store, did accept food coupons in payment for sale of ineligible items in violation of the pertinent regulations. Accordingly his disqualification to participate in the food stamp program hereby is affirmed.

We now must decide whether we may alter, or reduce, the sanction imposed by the administrative officer. Research on this issue clearly shows that we have no such power. As the Fourth Circuit wrote in Welch v. United States:

"The sole question on this appeal is whether under the Food Stamp Act of

1964 a district court may reduce an administratively imposed sanction for admitted violations of the Act when the sanction so imposed is within the allowable range of the statute and implementing regulations.

\* \* \* \* \* \*

"Reasonably construed, the statutory language does not authorize the court to go beyond the issue of the validity of the disqualification action and modify the period of the administrative sanction. This construction of the statute was adopted by the Sixth Circuit in a case strikingly similar to this. Martin v. United States, 459 F. 2d 300 (6 Cir. 1972). In that case, although the violations were admitted, the district court had reduced the period of disqualification from six months to thirty days upon the ground that the action of the Secretary was too harsh. The court of appeals reversed the lower court stating that '[t]he statute authorizes a review only on the merits of the case, and not on the period of disqualification.' The Seventh Circuit reached a similar conclusion in Save More of Gary, Inc. v. United States, 442 F.2d 36 (7 Cir. 1971). There, the district court rejected evidence of mitigating factors, stating that they were elements to be considered by the administrative officers in determining the period of disqualification but were not sufficient to challenge the validity of the disqualification itself. Upon appeal the plaintiff contended that the district court had unduly limited the scope of judicial review. However, the court of appeals affirmed with the observation that the statute authorizes a trial *de novo* only with respect to the validity of the administrative action in issue. This limitation on the scope of the judicial review was also recognized in Marbro Foods, Inc. v. United States, 293 F.Supp. 754 (N.D.Ill. 1968), and Farmingdale Supermarket, Inc. v. United States, 336 F.Supp. 534 (D.C.N.J., decided October 4, 1971).

"We are in accord with the conclusions reached in the foregoing cases and hold that the district court exceeded its authority in reducing the administrative sanction." 464 F.2d 682–684 (1972).

Although we do not have the power to modify the sanction administratively imposed, we are aware of the severe financial hardship which the one-year disqualification will place upon plaintiff. Accordingly, we strongly recommend that the Food Stamp Administrator review the length of the disqualification period imposed and make a just determination as to whether it is too severe under the circumstances of the case.