**DALE AND SELBY SUPERETTE & DELI, Bassam Hasan, Hyatt Taweelah and Adel Taweelah, Plaintiffs,**

v.

**UNITED STATES DEPARTMENT OF AGRICULTURE, Defendant.**

Civ. No. 4–93–738.

United States District Court, D. Minnesota, Fourth Division.

Nov. 8, 1993.

---

Mark David Luther, Luther Law Office, St. Louis Park, MN, for plaintiffs.

Mary Ellen Carlson, U.S. Atty. Office, Minneapolis, MN, for defendant.

## ORDER

DOTY, District Judge.

This matter is before the court on cross-motions for summary judgment. The parties agreed that this matter shall be decided upon submissions and without further hearing. Based upon a review of the file, record and proceedings herein and for the reasons stated below, the court grants plaintiffs' motion for summary judgment and denies defendant's motion for summary judgment.

## BACKGROUND

The facts of the case are virtually undisputed. Plaintiffs are a St. Paul convenience store and its owners and managers. On October 31, 1991, the store was authorized by the United States Department of Agriculture, Food and Nutrition Service ("FNS"), to participate in the food stamp program which is part of the Food Stamp Act of 1964, 7 U.S.C. § 2011 et seq. On June 8, 1992, FNS received a complaint that the store was purchasing food stamps at one-half of their face value. In response to this complaint FNS requested that its Compliance Branch conduct an investigation into the store's food stamp activities. The initial complaint was not substantiated by this investigation. However, over a four month period, investigators were able to purchase ineligible items with food stamps in eight of twelve attempts. The total value of the ineligible items was $46.26.

In a letter dated March 9, 1993, FNS advised the store's owners of the results of the investigation and their possible disqualification from the food stamp program. In response to the letter, plaintiff Hyatt Taweelah, one of the store managers, telephoned FNS to discuss the investigation. She did not deny that the alleged purchases occurred. Rather, she said, by way of explanation, that she and her husband had been involved in a serious accident. As a result, the clerks responsible for the ineligible transaction had been inadequately supervised. These clerks had, however been fired. She denied that either she or her husband had been involved in illegal food stamp transactions.

On March 26, 1993, FNS sent the plaintiffs a letter informing them that they would be disqualified for a period of six months. The letter stated two reasons for temporary disqualification. First, "[e]ight transactions occurred involving obviously ineligible items. . . . The evidence in this case indicates that such actions represent carelessness or poor supervision." The plaintiffs do not dispute the occurrence of these transactions. Neither do plaintiffs dispute the attribution of the occurrences to carelessness or poor supervision.

The letter immediately goes on to state a second reason for the six-month disqualification. "Furthermore, the record shows that you had been advised previously both orally and in writing in a letter dated ___, about the possibility that violations were occurring and of the possible consequences of violating." The March 26 letter left a blank space where the date of an earlier letter might have been stated. Plaintiffs allege that they received no such letter. FNS now acknowledges that no prior warning letter was sent. FNS alleges that reference to an earlier letter was a typographical error. FNS also does not suggest that an oral warning was ever given to plaintiffs.

Plaintiffs seek judicial review of the FNS sanction of six months disqualification. Plaintiffs argue that the penalty is too severe for the violations. They argue that a warning letter, rather than six months disqualification, is the appropriate sanction. Defendant argues that the choice of a sanction is within the discretion of the agency and ought therefore to be upheld on the basis of the undisputed facts.

## DISCUSSION

Oversight of the food stamp program is entrusted to the Secretary of the Department of Agriculture. Initial determinations of program compliance and sanctions for noncompliance are handled internally. There is an internal review process available to stores which are subject to sanctions. Judicial re-

view by the federal district court of FNS sanctions is provided for in 7 U.S.C. § 2023(a). A store which has been disqualified may file suit in the United States District Court. That suit:

> shall be a trial de novo by the court in which the court shall determine the validity of the questioned administrative action in issue.... If the court determines that such administrative action is invalid, it shall enter such judgment or order as it determines is in accordance with the law, and the evidence.

7 U.S.C. § 2023(a).

■ In the Eighth Circuit,[1] judicial review involves two separate inquiries with distinct standards.

> [T]he district court is authorized to conduct a *de novo* review of the validity of the Department of Agriculture's determination that the Food Stamp Act has been violated. A more limited scope of review applies, however, when the administrative determination that a violation has occurred is valid and the challenge is to the sanction imposed on the violator of the Act.... [T]he district court must limit its review to a determination of whether the sanction imposed on the violator is arbitrary and capricious.

*Studt v. United States,* 607 F.2d 1216, 1218 (8th Cir.1979). Whether a sanction is arbitrary and capricious is determined by examining the facts in the particular case. *Id.* at 1219.

In this case there is no question that the store and at least some of its clerks violated the Act. The plaintiffs have admitted that the violation occurred. The only questions before the court are whether the six-month disqualification is an arbitrary and capricious sanction under the circumstances and, if so, what sanction is appropriate.

■ The various sanctions which FNS may impose are set forth in 7 C.F.R. § 278.-6(e)(1)–(7). Applicable sanctions range from permanent disqualification, when the store "trafficks" in food stamps or has been subject to two prior sanctions, 7 C.F.R. § 278.6(e)(1),

to the sending of a warning letter when "the violations are too limited to warrant a disqualification." 7 C.F.R. § 278.6(e)(7). A warning letter is not treated as a "prior sanction" if a store is later subject to sanctions by FNS. A six-month disqualification can be imposed "if it is the first sanction and employees had sold common nonfood items due to carelessness or poor supervision by the owner or management." 7 C.F.R. § 278.6(e)(5). Thus, on the undisputed facts of the case, plaintiffs might be subject to the sanction of six months disqualification.

However, several factors indicate that while technically within the parameters of the regulations, the FNS sanction against the plaintiffs was arbitrary and capricious. First, in adopting the arbitrary and capricious standard of review, the Eighth Circuit made it clear that the district court must consider the compliance efforts made by FNS prior to the imposition of a lower level sanction. *Studt,* 607 F.2d at 1218–1219. Although in *Studt* the Circuit Court reinstated the FNS sanction of a one year disqualification, which the district court had reduced to sixty days, it did so only after noting that the Department of Agriculture "could have reasonably concluded that it was a store policy to exchange non-eligible items for food stamps or, alternatively, that despite sufficient compliance efforts by Food and Nutrition Services personnel, Studt persisted in exchanging major non-grocery items ... for food stamps." *Id.* at 1219. The court noted, for example, that FNS investigators succeeded in purchasing ineligible items in each of their five attempts. *Id.* at 1218. Two of those purchases were made from the owners wife. *Id.* In this case FNS does not contend that the store has a policy of accepting food stamps for noneligible items. The investigatory records show that only eight of twelve attempted purchases were allowed. FNS does not contend that the owners were personally involved in the illegal transactions. Neither does FNS contest plaintiffs' claim to have fired the clerks responsible for the ineligible purchases. Furthermore, FNS does not indicate that it took steps to ensure

---

1. There is a split in the Circuits as to whether the district court may review the penalty imposed by FNS, as well as the facts·upon which a sanction is based. The Sixth and Seventh Circuits do not allow the district court to review the penalty. *Martin v. United States,* 459 F.2d 300 (6th Cir. 1972); *Save More of Gary, Inc. v. United States,* 442 F.2d 36 (7th Cir.1971).

compliance prior to imposing sanctions. Thus, the facts which led the Eighth Circuit to uphold the FNS sanction in *Studt* are absent in this case.

■ Second, in deciding if a sanction is arbitrary and capricious, the court should determine whether FNS followed its own normal procedures. *Sims v. United States Dept. of Agric. Food and Nutrition Serv.*, 860 F.2d 858 (8th Cir.1988). The March 26 letter is important evidence in this determination. The court is not persuaded by the government's claim that, when the March 26 letter mentions a previous letter, this is merely a "typographical error." Rather, the incomplete reference to a prior letter warning plaintiffs of possible violations more logically indicates that the six-month disqualification was imposed on the assumption that a prior warning had been given. Such a warning would have been consistent with FNS policies noted by the Fifth Circuit. "A warning letter will normally be the first determination ... [when] the evidence clearly shows that violations occurred contrary to the retailer's policy." *Bruno's, Inc. v. United States*, 624 F.2d 592, 594 (5th Cir.1980). In noting that a written warning is called for in the FNS Handbook, the Eighth Circuit has held that departures from the FNS guidelines are evidence that the sanction imposed may be arbitrary and capricious. *Sims*, 860 F.2d at 861.

■ The government argues that FNS was at least technically within the regulations when it imposed a six-month sanction. But the government does not address the issue of whether the normal policy of FNS is to send warning letters prior to imposing a sanction. The issue is not simply what FNS may do within the bounds of the regulations, but what it actually does in similar cases. If normal procedures were not followed in this case, and there are no extraordinary circumstances justifying deviation from normal practice, then the imposition of temporary disqualification appears to be arbitrary and capricious. The court finds that FNS departed from its normal procedures in imposing the six-month sanction on plaintiffs and that imposition of the sanction appears to have been arbitrary and capricious. A warning letter is the appropriate sanction, given the manner in which FNS normally responds to the type of violations involved in these circumstances.

The court also finds several aspects of the FNS investigation and correspondence with the plaintiffs disturbing. First, this investigation began with a complaint that the plaintiffs were trafficking in food stamps. That complaint was not borne out. While this does not invalidate the results of subsequent investigations, it does raise the question of why those investigations occurred. The court notes the gratuitous remark in the record of the initial complaint stating that the store owners were "Aribs" (sic). The court trusts that this was not the reason for the investigation of plaintiffs, but fails to see why it is a matter of record. This information might have been relevant had it played a role in the investigation, for example, if the Compliance Branch had sent an Arabic speaking investigator. But this does not appear to have been the case. In fact, investigation K notes that the investigator heard, but did not understand, the clerk speaking in a foreign language. Following that conversation, the clerk refused to allow the investigator to exchange food stamps for ineligible items. That particular transaction was one of the four unsuccessful attempts by investigators to purchase ineligible items.

Second, the March 26 letter states that investigators purchased items from "eight unidentified clerks." The percentage of clerks involved in ineligible purchases is a consideration used by the FNS in determining which sanction to impose. *Bruno's*, 624 F.2d at 595. However, the government has submitted copies of the individual investigations which reveal that far fewer than eight clerks, probably only three, perhaps only two, were involved. One clerk accounts for eight of the twelve investigatory visits. Thus, the letter leaves a paper trail which overstates the magnitude of the problem.

Third, FNS does not contest plaintiffs' claim that remedial action was taken when they became aware of the violations. Apparently, the clerks responsible for the ineligible purposes have been fired. If the purpose of sanctions is to ensure compliance with the food stamp program regulations, the court fails to see why a period of disqualification is appropriate in this case. Plaintiffs appear to have taken proper action to ensure that the

store policy is in line with program requirements. Temporary disqualification will only needlessly punish plaintiffs[2] who have already shown a willingness to abide by FNS regulations. On the other hand, a warning letter will serve to document the significance of the problem which had developed and make clear the agency's concern that plaintiffs scrupulously abide by food stamp purchase rules in the future.

On review, the court has authority to fashion a remedy in accordance with the law and the evidence. 7 U.S.C. § 2023(a). Given the facts of this case, the court finds that the six-month disqualification sanction was imposed in the belief that a warning letter had been sent to the plaintiffs and that plaintiffs had not heeded the warning. Such a letter appears to be an appropriate first step in insuring compliance before the imposition of a serious sanction. When plaintiffs responded to the March 26 letter, mentioning that they had not received a prior warning, FNS took refuge in the technicalities of their regulations, rather than admitting that an erroneous departure from normal agency practices had occurred. Such a departure is arbitrary and capricious. Therefore, the court holds that plaintiffs are entitled to have their motion for summary judgment granted. The appropriate sanction against them is a warning letter, indicating the violations which had been detected and the possible consequences of further violations.

## CONCLUSION

Defendant FNS imposed a six-month disqualification sanction on plaintiffs because of admitted sales of ineligible items in exchange for food stamps. However, that sanction was imposed in the erroneous belief that plaintiffs had received a prior warning concerning food stamp violations and the possible consequences if they continued. Because such a warning is the normal practice of FNS in cases such as this, the sanction of disqualification is arbitrary and capricious. Plaintiffs are entitled to immediate reinstatement to their previous status in the Food Stamp program and the substitution of a warning letter of the type mentioned in 7 C.F.R. 278.6(e)(7)

in place of the six-month disqualification imposed upon them. Accordingly, **IT IS HEREBY ORDERED** that:

1. Plaintiffs' motion for summary judgment is granted.

2. Defendant's motion for summary judgment is denied.

3. The United States Department of Agriculture, Food and Nutrition Service shall withdraw its six-month disqualification sanction from plaintiffs and substitute in its stead a letter of the type contemplated by 7 C.F.R. 278.6(e)(7).

4. Plaintiffs shall be reinstated to their pre-sanction status in the food stamp program.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

2. Plaintiffs claim that food stamps account for approximately $10,000, or 22%, of their monthly

business.