**J. C. B. SUPER MARKETS, INC.,**
**Plaintiff,**

**v.**

**UNITED STATES of America, and United States Department of Agriculture, Defendants.**

**Civ. 1970–232.**

United States District Court,
W. D. New York.

Dec. 15, 1972.

Hodgson, Russ, Andrews, Woods & Goodyear, Buffalo, N. Y. (Grover R. James, Jr., Buffalo, N. Y., of counsel), for plaintiff.

John T. Elfvin, U. S. Atty. (Philip B. Abramowitz, Buffalo, N. Y., of counsel), for defendants.

CURTIN, District Judge.

The plaintiff is a retail food store participating in the Food Stamp Program established pursuant to the Food Stamp Act, 7 U.S.C. § 2011 et seq. It brought this action under 7 U.S.C. § 2022 to obtain review of its disqualification from participation in the program for a period of thirty days. The disqualification was made pursuant to 7 U.S.C. § 2020 and the regulations promulgated thereunder, which are now contained in 7 C.F.R. 272.6. A temporary stay prohibiting disqualification pending hearing and determination of the case was entered by the court on May 21, 1970 and extended by agreement on June 26, 1970. By motion returnable March 14, 1972, the defendants moved for an order granting summary judgment.

In support of the motion, the defendants submitted affidavits by one Annie Mae Crum asserting that on March 25, 26 and 27, 1969, at a store operated by the plaintiff, she purchased with food stamps certain items which were ineligible for sale in exchange for the stamps. In opposition to the motion, the plaintiff submitted an affidavit by its president which reads in pertinent part:

.   .   .   [I]n the first of the three affidavits of Annie Mae Crum, she swears that the shopping on March 25, 1969 occurred at about 1:00 A.M. Deponent states that the Tops Market at 409 Niagara Street, Buffalo, New York, was not open at 1:00 A.M. on March 25, 1969, and has not been open for business at 1:00 A.M. on any other date since deponent became associated with said market and its operations.

\*     \*     \*     \*     \*     \*

With respect to the shoppings which are alleged by Annie Mae Crum to have occurred on March 26, 1969 and March 27, 1969, deponent does not admit that those shoppings, as therein stated, actually took place. In view of the volume of shoppings which take place at deponent's store in the period of a normal week (approximately 12,000 customers a week use the store) deponent is not especially in a position to deny that the shoppings took place. However, deponent submits there is certainly a question of fact as to whether they did take place and as to whether they took place as asserted by Annie Mae Crum
.   .   .   .

In reply the defendants submitted another affidavit by Annie Mae Crum stating that when she signed her affidavit relating to the March 25, 1969 incident, she failed to notice a typographical error relating to the time of the occurrence and that the correct time was 1:00 P.M. rather than 1:00 A.M.

From the material submitted by the defendants in answer to the plaintiff's interrogatories, it is apparent that, in the administrative proceedings that preceded the instant action, the plaintiff did not admit making the sales which resulted in its disqualification. For example, the report of a special agent's interview of the cashiers who allegedly made the sales states as to one of the cashiers: "He feels that if he permitted the sale of ineligibles for food stamps it was because he was careless as he knows better than to do that." As to the other cashier, the report states as follows:

She feels that she knows the Regulations and certainly knows that beer is ineligible. She cannot explain why

she sold ineligible items for food stamps and probably was careless when she did so. She knows that sometimes she has removed ineligible items from a food order after she rang up the entire order and the customer then displayed food stamps in payment.

The report of an interview of the plaintiff's president by the investigating officer stated as follows:

I have made it very plain that I will not tolerate [the cashier in the first two incidents] or any other employee violating program rules. Additionally, the head cashier is adding a statement that from her personal knowledge and observations, this cashier . . . is operating properly, and that last week, she refused an order due to the lack of proper indentification of the customer.

\* \* \* \* \* \*

I desire to state that [the cashier in the third incident] is the store manager. He is a man of high integrity and very conscientious. He is not a trained cashier, but he manned the cash register during a press of heavy business, and that this transaction would reflect an inadvertant [sic] situation rather than [his] personal attitude or the store policy.[1]

In pertinent part, Section 2022 provides as follows:

The suit in the United States district court . . . shall be a trial de novo by the court in which the court shall determine the validity of the questioned administrative action in issue. If the court determines that such administrative action is invalid it shall enter such judgment or order as it determines is in accordance with the law and the evidence.

■■ Section 2022 is not unambiguously drafted. While it is clear that a district court has jurisdiction to review an administrative decision to disqualify a food distributor, courts are divided over two aspects of the scope of review. First, they disagree on the question whether a district court may reduce the period of disqualification if it finds that the action of disqualification was valid. *See* Welch v. United States, 464 F.2d 682 (4th Cir. 1972); Martin v. United States, 459 F.2d 300 (6th Cir. 1972). This court need not confront this question at this stage of the instant proceeding. Second, courts disagree as to whether the reviewing court must uphold the action of disqualification as valid unless it is unsupported by substantial evidence. *Compare* Peoples v. United States Dep't of Agriculture, 138 U.S. App.D.C. 291, 427 F.2d 561, 565 (1970), *and* J. L. Saunders, Inc. v. United States, 52 F.R.D. 570 (E.D.Va.1971), *with* Marbro Foods, Inc. v. United States, 293 F.Supp. 754 (N.D.Ill.1968). In resolving this question, this court believes that the use of the term "trial de novo" indicates a legislative intention to provide a scope of review not limited to that available under the general provi-

---

1. The defendants contend that in a letter dated October 21, 1969 the plaintiff's president admitted that the sales resulting in the plaintiff's disqualification had occurred. They argue that the italicized portions of the following sentences constitute the admission:

*Since the incidents to which the proposed disqualification relate have occurred,* training at this store, particularly with respect to the Food Stamp Program, has been intensified.

\* \* \* \* \* \* \*

*I can assure you that the management of J.C.B. Super Markets, Inc. has learned a lesson from this proceeding and* will at all times stress the importance of abiding by the Food Stamp Regulations and of properly training the personnel who handle the redemption of food stamps.

It is clear, however, that only by taking the italicized portions of the quotation out of context may one read them as constituting such an admission.

sions of the Administrative Procedure Act, 5 U.S.C. § 701 et seq. *See* 5 U.S.C. § 706(2)(F). Consequently, in determining the validity of an action of disqualification, the court should make its own findings of fact based upon a preponderance of the evidence before it and not be limited to a consideration of the evidence presented in the administrative proceeding. The use of the term "trial de novo" in Section 2022 does not, however, signify an intention to provide a party the right to have its case tried if summary judgment is appropriate because "there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c).

■ Turning to the instant case, one finds a dispute over whether the sales resulting in the plaintiff's disqualification actually occurred. The plaintiff has not admitted that violations took place, nor was there "implicit in the whole series of letters [in the case] . . . an admission that the violations in fact did occur." Save More of Gary, Inc. v. United States, 442 F.2d 36 (7th Cir.), petition for cert. dismissed, 404 U.S. 987, 92 S.Ct. 535, 30 L.Ed.2d 549 (1971). The situation in the instant case is like that in Miller v. United States, 54 F.R.D. 471 (W.D.Pa.1972). In that case, the court denied the defendant's motion for summary judgment because the plaintiff had submitted an affidavit denying the happening of the sales forming the basis for his disqualification and thus there existed a genuine issue as to a material fact. In the instant case, the affidavit of the plaintiff's president also creates a genuine issue as to whether the sales in question occurred, and the motion for summary judgment must be, and hereby is, denied.[2]

So ordered.

---

2. Although summary judgment was granted for the defendant in Marbro Foods, Inc. v. United States, 293 F.Supp. 754 (N.D.Ill. 1963), even though one of the plaintiff's officers had stated that he could not deny or admit the charges, the court in that case proceeded upon the assumption rejected by this court that administrative findings were to be accepted unless they were unsupported by substantial evidence.