Marvin McCRAY, d/b/a McCray's Market and A & B Party Store, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 79–10241.

United States District Court, E. D. Michigan, N. D.

Feb. 23, 1981.

John A. Picard, Walker, Troester & Picard, Saginaw, Mich., for plaintiff.

Michael J. Hluchaniuk, Asst. U. S. Atty., E. D. Mich., Bay City, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

JAMES HARVEY, District Judge.

Plaintiff brought this action under the Food Stamp Act, 7 U.S.C. §§ 2011–2027, seeking judicial review of a decision by the United States Department of Agriculture to disqualify his two stores from participating in the food stamp program for a period of one year.

The Court held two days of trial in which it heard the testimony of eleven witnesses and admitted thirteen exhibits into evidence. Upon a review of the entire record in this matter, the Court hereby sets forth its Findings of Fact and Conclusions of Law pursuant to F.R.Civ.P. 52(a).

### FINDINGS OF FACT

1. Marvin McCray is the owner of McCray's Market and the A & B Party Store. Both stores are located in Saginaw, Michigan.

2. At all times relevant to this action, plaintiff's stores were authorized to accept food stamps in accordance with the statutory provisions of the Food Stamp Act, 7 U.S.C. § 2011 et seq.

3. The defendant United States administers the food stamp program through the Food and Nutrition Service of the Department of Agriculture (hereinafter "FNS").

4. On or about September 12, 1977, FNS commenced a compliance review of McCray's Market. On or about October 17, 1977, FNS similarly commenced a compliance review of A & B Party Store. The Service had received complaints from local store owners in the Saginaw area of food stamp violations occurring at plaintiff's stores, and had noticed a statistically high rate of redemption on food stamps from both stores. FNS therefore became suspicious that the stores were selling ineligible non-food items for food stamps in violation of 7 U.S.C. § 2103(a) (1977), 7 CFR 270.2(s) (1978) and 7 CFR 272.2(b) (1978).[1]

5. As part of its compliance review, FNS had Rodney R. Johnson, a Compliance Specialist, conduct an investigation of plaintiff's stores to determine whether violations of the food stamp program were taking place.

6. Mr. Johnson hired two "aides," Vicki Mathis and Stanley Phillips, to assist him with his investigation. These aides were provided only with food stamps and instructed to shop at plaintiff's stores in a normal manner, but to attempt to purchase certain ineligible items along with other, eligible groceries.

7. During the months of February and March in 1978 the aides shopped at each of plaintiff's stores at least five times.

8. On June 30, 1978, the plaintiff was sent separate, but similarly worded letters from FNS informing him that based on its investigation, there was reason to believe that he had violated the Food Stamp Act by selling ineligible non-food items with food stamp coupons at both of his stores.

9. On July 17, 1978, the plaintiff and his wife sent a letter to FNS stating that employees of A & B Party Store denied selling ineligible items for food stamps and requested an opportunity to have these employees appear before the food stamp review officer.

On July 20, 1978, the plaintiff sent a letter to FNS stating that he and his em-

---

1. 7 U.S.C. § 2013(a) (1977) provides in pertinent part:

The coupons so received by such households shall be used only to purchase food from retail food stores which have been approved for participation in the food stamp program. Coupons issued and used as provided in this Act shall be redeemable at face value by the Secretary through the facilities of the Treasury of the United States.

7 CFR 272.2(b) (1978) provides in pertinent part:

(b) Coupons shall be accepted by an authorized retail food store or meal service only in exchange for eligible food as defined in § 270.2(s) of this subchapter...

7 CFR 270.2(s) (1978) provides in pertinent part:

(s) "Eligible food" means any food or food product for human consumption except alcoholic beverages and tobacco and also includes seeds and plants for use in gardens to produce food for the personal consumption of the eligible household...

ployees did not recall selling ineligible items for food stamps at McCray's Market as alleged.

10. Despite plaintiff's qualified denials, on September 11, 1978, FNS sent letters to plaintiff informing him that each of his stores were being disqualified from the food stamp program for one year.

11. Following an administrative review, on August 16, 1979, FNS affirmed the one year disqualification of plaintiff's stores from the program.

12. Upon receiving the decision of the administrative review board, the plaintiff timely filed this lawsuit. The disqualification of plaintiff's stores was stayed throughout the entire administrative process and the proceedings before this Court, therefore the stores have remained on the food stamp program without interruption.

13. At trial the plaintiff called eleven witnesses including himself, his wife, and two cashiers from his stores. These witnesses repeatedly denied accepting food stamps towards the purchase of ineligible items at either of plaintiff's stores. The testimony established that neither the plaintiff, nor any of his clerks, had any recollection of Vicki Mathis or Stanley Phillips, nor of any of the specific violations alleged by FNS.

In addition, the plaintiff demonstrated that the FNS administrative review staff made its determination without ever considering the actual cash register tapes received by aides Mathis and Phillips after their alleged purchases of ineligible items. Since, during the time period in question, non-food items purchased at grocery stores in Michigan were taxed, M.C.L.A. § 205.-54g(1), M.S.A. § 7.525(7)(1), a fact generally reflected on cash register tapes, the actual tapes from the alleged transactions would have been evidence of whether non-food items were indeed purchased. FNS Compliance Specialist Rodney R. Johnson testified that these register tapes were kept on file at the Chicago Office of FNS, but explained only that it was a matter of procedure that such tapes were not part of the administrative record or produced as evidence at trial.

14. The government's case rested entirely on the testimony of Rodney Johnson and the administrative records for both McCray's Market and A & B Party Store. Mr. Johnson testified that during the investigation he never entered plaintiff's stores, nor personally observed any of the alleged use of food stamps to purchase ineligible items. His function was to wait in a nearby automobile and record information on a "transaction report" following return of the undercover aide. The government was unable to produce either of the two aides used in this investigation to testify at trial.

15. The government places great reliance on the administrative records for McCray's Market and A & B Party Store, and specifically the transaction reports filled out by Mr. Johnson and signed by the aide which are contained therein, as evidence that the violations occurred.

16. Based on all the evidence and testimony presented at trial, this Court finds that the plaintiff established by a preponderance of the evidence that it did not violate the statutory provisions of the Food Stamp Act. The burden then shifted to the government which failed to present evidence sufficient to support the administrative findings of FNS. Therefore, the factual basis supporting the FNS determination was incorrect and the decision to disqualify plaintiff's stores from the food stamp program for one year must be set aside.

CONCLUSIONS OF LAW

1. This Court has jurisdiction of this action pursuant to 7 U.S.C. § 2023 (1977), which provides in pertinent part:

If the store ... feels aggrieved by such final determination (of the FNS administrative review staff), it may obtain judicial review thereof by filing a complaint against the United States in the United States court for the district in which it resides or is engaged in business or, in the case of a retail food store or wholesale food concern, in any court of record of the State having competent jurisdiction, within thirty days after the date of deliv-

ery or service of the final notice of determination upon it, requesting the court to set aside such determination. The copy of the summons and complaint required to be delivered to the official or agency whose order is being attacked shall be sent to the Secretary or such person or persons as the Secretary may designate to receive service of process. *The suit in the United States district court or State court shall be a trial de novo by the court in which the court shall determine the validity of the questioned administrative action in issue. If the court determines that such administrative action is invalid, it shall enter such judgment or order as it determines in accordance with the law and the evidence.* During the pendency of such judicial review, or any appeal therefrom, the administrative action under review shall be and remain in full force and effect, unless an application to the court on not less than ten days' notice, and after hearing thereon and a showing of irreparable injury, the court temporarily stays such administrative action pending disposition of such trial or appeal. (emphasis added)

■ 2. As noted in *Farmingdale Supermarket Inc. v. United States,* 336 F.Supp. 534, 536 (D.N.J.1971), "a trial 'de novo' means trying the matter anew, the same as if it had not been heard before and as if no decision had previously been rendered." This Court finds nothing in the Food Stamp Act, 7 U.S.C. § 2011 *et seq.* or its legislative history to suggest that Congress intended anything other than having this Court make an independent determination of the issues when a trial de novo is had before it to challenge the validity of administrative action taken by FNS. *See United States v. First City National Bank of Houston,* 386 U.S. 361, 368, 87 S.Ct. 1088, 1093, 18 L.Ed.2d 151 (1967).

■ 3. As noted by the Sixth Circuit in *Saunders v. United States,* 507 F.2d 33, 36 (C.A.6, 1974):

In providing for a trial de novo upon court review of disqualification determinations, Congress intended a broader scope of review than that permitted under the general provisions of the Administrative Procedure Act. 5 U.S.C. 706; *JCB Super Markets Inc. v. United States, supra* [D.C.] 57 F.R.D. [500] at 502–503. This requires a reexamination of the entire matter rather than a mere determination of whether the administrative findings are supported by substantial evidence. *Great Atlantic & Pacific Tea Co. v. United States,* 342 F.Supp. 492, 493 (S.D.N.Y., 1972), *contra, Marbro Foods Inc. v. United States,* 293 F.Supp. 754, 755 (N.D.Ill., 1968). The court should make its own findings of fact based on the preponderance of the evidence and not limit itself to matters considered in the administrative proceedings. *JCB Super Markets Inc., supra,* 57 F.R.D. at 503. Even if the unsworn statements relied upon by the government were sufficient to support a determination at the administrative level, the provision for a trial de novo requires that the district court make its determination on evidence of a kind and quality sufficient to support findings of fact under Rule 52(a), F.R.Civ.P. Since the procedures followed at the administrative level do not provide for discovery or testing the evidence of the Department of Agriculture by cross-examination, it is particularly important that an aggrieved person who seeks judicial review in a trial de novo not be deprived of these traditional tools unless it is clear that no issue of fact exists.

*See also Modica v. United States,* 518 F.2d 374, 376 (C.A.5, 1975); *Bush v. United States,* 473 F.Supp. 715, 717 (E.D.Pa.1979); *JCB Super Markets Inc. v. United States,* 57 F.R.D. 500, 502–503 (W.D.N.Y.1972), *affirmed* 530 F.2d 1119 (C.A.2, 1976). This rather clear language suggests to the Court that the government may not merely rely on the unsworn statements of undercover aides, or the administrative record itself, in a trial de novo to determine whether violations of the Food Stamp Act occurred. For the Court to so rely on such evidence and summarily affirm the FNS decision would, as the *Saunders* court warns, deprive the

aggrieved person of the traditional truth-finding tools available in the trial of a case, particularly cross-examination of the government's central witnesses. In this case, the government's inability to produce the two undercover aides as witnesses or the actual cash register tapes as exhibits, denied plaintiff the opportunity to question, rebut, cast doubt on, or impeach the evidentiary foundation of the FNS decision during the trial de novo before this Court.

4. This Court must also conclude that in relying on the limited evidence it produced to support the administrative determination, the government failed to satisfy its burden of proof.

Perhaps the best discussion of the burden of proof in these matters appears in *Redmond v. United States*, 507 F.2d 1007, 1011–1012 (C.A.5, 1975) wherein the Court stated:

> By rejecting the substantial evidence standard of review in the Food Stamp Program and permitting a trial de novo, Congress intended nothing more than that the district court would not be bound by the administrative record. But by requiring the aggrieved store to file a complaint in the district court requesting the court to set aside the agency determination, the Act casts the burden of being the plaintiff on the aggrieved store with all of the usual responsibilities of a plaintiff in obtaining relief from a court, including the burden of proving facts to show that he is entitled to relief. In other words, the agency action stands, unless the plaintiff proves that it should be set aside. He may offer any relevant evidence available to support his case, whether or not it has been previously submitted to the agency, and the agency itself may offer any evidence available to support its action, whether or not in the administrative record. But unless proven to be invalid, the agency action prevails.

*Redmond* thus establishes that the burden of proof in cases brought under 7 U.S.C. § 2023 is on the plaintiff storeowner to prove, by a preponderance of the evidence, that the challenged FNS action is invalid.

*See Goodman v. United States*, 518 F.2d 505, 507 (C.A.5, 1975); *Smith v. United States*, 392 F.Supp. 1116, 1119 (W.D.La. 1975).

5. The crux of this case and the Court's decision herein involves the burden of proof issue. While affording the administrative records of FNS a presumption of validity, *Redmond v. United States, supra*, the Court still does not believe that these records, or the testimony of Rodney Johnson offered to support them, are sufficient to rebut plaintiff's showing, by a preponderance of the evidence, that these violations did not occur.

6. The case which most closely parallels that before the Court, in terms of the proof presented at trial, is *Gilmore v. United States Department of Agriculture Food & Nutrition Service*, 468 F.Supp. 540 (E.D.Mo. 1979). In *Gilmore* the plaintiff storeowners, in a similar proceeding, presented testimony from various witnesses to demonstrate that the store did sell ineligible items with food stamps. The government countered with the testimony of the FNS Compliance Specialist who conducted the investigation, as well as with some of the actual cash register tapes which were introduced as exhibits. Unlike our case, not only did the government offer some of the actual tapes, but the FNS specialist in *Gilmore* was himself the person who acted undercover and made the alleged purchases of ineligible items.

The Court in *Gilmore*, on grounds of credibility as well as sufficiency of proof, held that the plaintiffs had shown by a preponderance of the evidence that the alleged ineligible sales did not occur.

7. While credibility of the government's sole witness is not at issue in the present case, an even clearer instance of insufficiency of the government's proof is present here than in *Gilmore*.

8. For all of the foregoing reasons, the Court concludes that the plaintiff did not violate the statutory provisions of the Food Stamp Act. Accordingly, the FNS decision to disqualify plaintiff's stores from the food stamp program for one year is hereby set aside.

IT IS SO ORDERED.