BROAD STREET FOOD MARKET,
INC., Plaintiff, Appellee,

v.

UNITED STATES of America,
Defendant, Appellant.

No. 83–1261.

United States Court of Appeals,
First Circuit.

Argued Oct. 4, 1983.

Decided Nov. 2, 1983.

Daniel Bensing, Atty., Appellate Staff, Civil Div., Dept. of Justice, with whom J. Paul McGrath, Asst. Atty. Gen., Washington, D.C., Lincoln C. Almond, U.S. Atty., Providence, R.I., and Michael Kimmel, Atty., Appellate Staff, Civil Division, Dept. of Justice, Washington, D.C., were on brief, for appellant.

Thomas H. Quinn, Jr., Providence, R.I., with whom Quinn & Shechtman, Providence, R.I., was on brief, for appellee.

Before CAMPBELL, Chief Judge, TIMBERS,* Senior Circuit Judge, and BOWNES, Circuit Judge.

LEVIN H. CAMPBELL, Chief Judge.

This is an appeal from a district court order, 555 F.Supp. 1319, setting aside a one-year disqualification from the food stamp program and mandating a civil money penalty instead.

The Food and Nutrition Service ("FNS") of the Department of Agriculture is charged with enforcing the Food Stamp Act. Because of the high rate of food stamp redemption at the Broad Street Food Market ("the Market"), the FNS undertook an investigation which resulted in a finding that the Market had a policy of accepting food stamps as payment for ineligible items. The FNS gave the Market notice of the charges, and the Market defended, not by denying them, but by contending that the community would suffer great hardship were the Market to be penalized by disqualification. The Food Stamp Act provides,

* Of the Second Circuit, sitting by designation.

Any approved retail food store or wholesale food concern may be disqualified for a specified period of time from further participation in the food stamp program, or subjected to a civil money penalty of up to $10,000 for each violation if the Secretary determines that its disqualification would cause hardship to food stamp households, on a finding, made as specified in the regulations, that such store or concern has violated any of the provisions of this chapter or the regulations issued pursuant to this chapter. 7 U.S.C. § 2021. The FNS rejected the Market's arguments regarding hardship and imposed the sanction of a one-year disqualification.

The Market filed an action for de novo review in the district court pursuant to 7 U.S.C. § 2023. The Market did not challenge the finding of a violation, but introduced additional evidence on the question of hardship to the community from disqualification. The new evidence consisted of a market research study on the value of the Market to the community. The district court found that the sanction imposed was rationally supported by the administrative record, but held that the new evidence rendered the sanction "factually unjustifiable and legally improvident."

▉ The government argues that the court below improperly considered new evidence in reviewing the FNS's choice of sanction. As a preliminary matter, appellee contends that the government waived this argument by failing to object to introduction of the study at trial. While the government stipulated to the admissibility of the study and to the preparer's credentials, this did not constitute a waiver of its legal argument regarding the proper record for review. The district court fully addressed the issue whether the new evidence should be considered in reviewing the FNS sanction and decided that examining the new evidence was proper. The government objected to that decision in a Rule 59(e) motion, but the district court denied the motion on the basis of its prior opinion. We therefore review the district court on this important question of the proper scope of judicial review.

Our discussion of the scope of review will be aided by a description of the enforcement mechanism for the food stamp program. The Secretary of Agriculture is empowered to issue regulations for administration of the program. 7 U.S.C. § 2013. The Secretary's regulations regarding sanctions, 7 C.F.R. § 278.6, are consistent with the section of the Food Stamp Act providing for disqualification and civil money penalties, 7 U.S.C. § 2021, and are not challenged here. · The FNS is charged with determining violations of the Food Stamp Act and imposing appropriate sanctions. When the FNS contemplates a sanction, the retailer is given ten days to respond orally or in writing to the charges. The FNS then renders its decision. Thereafter, review is provided by "a trial de novo by the [district] court in which the court shall determine the validity of the questioned administrative action in issue." 7 U.S.C. § 2023.

The power to impose civil money penalties in addition to disqualification was added by the 1977 amendments to the Food Stamp Act. The legislative history of those amendments contains clear language with respect to judicial review of sanctions:

The Committee wants to go on record as noting that, when there is imposition of disqualification for such period of time as may be determined in accordance with regulations ... the Committee does not intend that, in the trial de novo in the United States district court or state court of the final administrative determination of disqualification, the sanction or period of disqualification imposed would itself be subject to judicial review as several courts have held that it is. See *Goodman v. United States,* 518 F.2d 505 (5th Cir. 1975) and *Cross v. United States,* 512 F.2d 1212 (4th Cir.1975) (en banc). But see *Martin v. United States,* 459 F.2d 300 (6th Cir.), *cert. denied,* 409 U.S. 878 [95 S.Ct. 129, 34 L.Ed.2d 131] (1972) and *Save More of Gary, Inc.,* 442 F.2d 36 (7th Cir.), *cert. dismissed,* 404 U.S. 987 [92 S.Ct. 535, 30 L.Ed.2d 549] (1971). The trial de novo as

set forth in section 14 [section 2023] should be limited to a determination of the validity of the administrative action, but not of the severity of the sanction. Review of the factual determination that a violation occurred is normal grist for the courts; review of the length of highly discretionary a [sic] sentence of disqualification is not.

H.R.Rep. No. 464, 95th Cong., 1st Sess. 397–98, *reprinted in* 1977 U.S.Code Cong. & Ad. News 1978, 2326–27. The cases cited approvingly by the House Report, *Martin v. United States* and *Save More of Gary, Inc. v. United States,* reached slightly different results. *Martin* held that the jurisdiction of a reviewing court ends when the merits of the violation have been reviewed. *Save More of Gary* held that the reviewing court has jurisdiction to determine whether the sanction was "unduly harsh." 442 F.2d at 37.

█ Our subsequent decisions have adopted a standard equivalent to the closely circumscribed review in *Save More of Gary.* In *Kulkin v. Bergland,* 626 F.2d 181, 184 (1st Cir.1980), this court held that "[a]n agency's choice of sanction is not to be overturned unless the reviewing court determines it is 'unwarranted in law ... or without justification in fact ....' " (*quoting Butz v. Glover Livestock Commission Co.,* 411 U.S. 182, 185–86, 93 S.Ct. 1455, 1458, 36 L.Ed.2d 142 (1973)). *See also Collazo v. United States,* 668 F.2d 60 (1st Cir. 1981). We reaffirm the principle, applied in *Kulkin,* that when Congress entrusts enforcement to an administrative agency, the choice of a sanction is "peculiarly a matter for administrative competence." *Kulkin,* 626 F.2d at 184.

█ The FNS has promulgated detailed regulations establishing graduated penalties for violations of the Food Stamp Act. *See* 7 C.F.R. § 278.6. The sanctions conform to the penalty provisions of 7 U.S.C. § 2021. Under the enforcement scheme envisioned by Congress, and as in-

terpreted by this court, the agency determines when violations have occurred and chooses a sanction which appropriately fulfills the policies of the Food Stamp Act. This choice of penalty includes discretion to impose a civil money fine rather than disqualification "if the Secretary determines that ... disqualification would cause hardship to food stamp households ...." 7 U.S.C. § 2021(a). Upon filing of a suit by the retailer, the district court conducts a trial de novo on the finding of a violation at which the parties may introduce new evidence regarding the violations. If the court finds a lesser violation or no violation, the statute directs the court to "enter such judgment or order as it determines is in accordance with the law and the evidence." 7 U.S.C. § 2023. Thus the court may itself choose a new sanction based on all the evidence, or remand for the agency to select a new penalty. *See Goodman v. United States,* 518 F.2d 505, 512 (5th Cir.1975). If the court upholds the agency's finding of violation, the court's only remaining task is to examine the sanction imposed in light of the administrative record to judge whether the agency properly applied its regulations, *i.e.,* whether the sanction is "unwarranted in law ... or without justification in fact ...." *See Butz v. Glover Livestock Commission Co.,* 411 U.S. 182, 185–89, 93 S.Ct. 1455, 1457–59, 36 L.Ed.2d 142 (1973). This scheme of review comports with the Supreme Court's holding that when applying the "arbitrary, capricious" standard "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts,* 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973).[1]

█ We cannot agree with the Fourth Circuit that due process requires de novo review of the Secretary's choice of sanction. *See Cross v. United States,* 512 F.2d 1212, 1218 (4th Cir.1975) (en banc). Rather, we agree with Judge Russell's dissent that

---

1. This court has held that "arbitrary, capricious" review can be equated with the standard of "unwarranted in law or without justification in fact." *Collazo v. United States,* 668 F.2d 60, 65 (1st Cir.1981); *Kulkin v. United States,* 626 F.2d 181, 184 n. 4 (1st Cir.1980).

"there is a considerable difference ... between the determination of a violation of law and the imposition of a sentence or a penalty after the fact of violation has been established." *Id.* at 1222 (Russell, J., dissenting). Even assuming, which we do not decide, that retailers have a "legitimate claim of entitlement" to participation in the food stamp program such as to invoke due process under *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972), the procedures provided under our interpretation of the statute are adequate. The retailer is provided an opportunity to present evidence on the violation and the sanction to the agency, and then is accorded de novo review by a court of the finding of violation and limited review of the choice of sanction. Whether even these procedures are required by due process is an issue we need not reach, but clearly due process does not mandate the added opportunity to present de novo evidence on the sanction determination. *Cf. United States v. Leavitt,* 478 F.2d 1101, 1104 (1st Cir.1973) (convicted criminal defendant has no constitutional right to allocution).

 The court below failed to follow this procedure, but rather examined the market study in reviewing the validity of the sanction after noting that appellee did not challenge the finding of violation. We feel the approach we have outlined is more in accord with congressional intent and our own past decisions.[2] It is particularly inappropriate to accept new evidence on the question of hardship, since the statute specifically commits that determination to the Secretary's discretion. 7 U.S.C. § 2021. As the regulations state, "FNS *may* impose a civil money penalty as a sanction in lieu of disqualification ...." 7 C.F.R. § 278.6(f) (emphasis added). Certainly the decision on whether to invoke a civil money penalty "is peculiarly a matter of administrative competence." *Kulkin,* 626 F.2d at 184.

Since the district court upheld the finding of violation and held that the sanction of disqualification was supported by the administrative record, we need not remand for further consideration. Rather we reverse the district court and reinstate the one-year disqualification ordered by the agency.

*Reversed.*

---

2. Even accepting the government's willingness to entertain the new evidence as a waiver of this rule, and taking account of that evidence, we see no basis for holding that the sanction is "unwarranted in law ... or without justification in fact ...." The most the survey does is make out a stronger case than existed before for the Market's position; it does not demonstrate the kind of clear error which alone would justify judicial reversal of the agency's sanction.