815 F.2d 703
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
HADI, INC., d/b/a Hadi Square Deal Supermarket, Plaintiff-Appellant,
v.
The UNITED STATES of America; United States Department of
Agriculture Food & Nutrition Service and John
Block, Secretary of Agriculture,
Defendants- Appellees.
 No. 86-3356.
 United States Court of Appeals, Sixth Circuit.
 March 24, 1987.
 
 Before MERRITT, WELLFORD and MILBURN, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff-appellant Hadi, Inc., appeals the district court's entry of summary judgment in favor of defendant-appellee Department of Agriculture Food and Nutrition Service ("the FNS") in this action challenging a three-year disqualification from participation in the Food Stamp Program. For the reasons that follow, we affirm.
 
 I.
 
 2
 Plaintiff is a small supermarket located in a low-income area of Cleveland, Ohio. Plaintiff was authorized to participate in the Food Stamp Program on May 30, 1984. The redemption of food stamps for the eight-month period following plaintiff's authorization totaled Two Hundred Twenty-one Thousand Fifty Dollars ($221,050.00). The average monthly redemption rate for stores in that area for the same eight-month period equaled only Twenty-seven Thousand Six Hundred Thirty-one Dollars ($27,631.00).
 
 
 3
 Because of the high rate of food stamp redemption, the FNS began an undercover investigation. On August 16, 1984, a female employee of plaintiff accepted food stamp coupons in exchange for ineligible items including laundry softener, laundry detergent, and dishwashing detergent. On September 11, 1984, this female clerk again accepted food stamp coupons for the purchase of ineligible items including a major ineligible item, a carton of cigarettes. On September 13, 1984, another female employee of plaintiff's accepted food coupons in exchange for ineligible items including laundry detergent, face soap, cleanser, and a major ineligible item, a carton of cigarettes. On September 18, 1984, a male employee of plaintiff accepted food stamp coupons in exchange for ineligible items including bath soap, spray starch, household cleaner, and a major ineligible item, a six-pack of beer.
 
 
 4
 Nick Qasem, owner of plaintiff, was notified of the charges and permitted to file a response. After review of plaintiff's response, it was determined that plaintiff would be disqualified from participation in the Food Stamp Program for a period of three years. Plaintiff sought review of the determination, and a hearing was held on June 25, 1985. Following the administrative hearing, it was determined that the three-year disqualification should be affirmed.
 
 
 5
 Plaintiff sought de novo review of the FNS decision in district court. Based upon the stipulated administrative record, the district court determined that the sanction imposed by the FNS was appropriate and that the decision to disqualify plaintiff for a period of three years was not arbitrary or capricious. The district court rejected plaintiff's argument that the FNS decision violated the FNS' own regulations because the FNS had not issued a warning to plaintiff alerting it of the possibility that violations were occurring. The court reasoned that the violations stipulated established plaintiff had a practice of selling major ineligible items for food stamps, and, therefore, no warning was necessary.
 
 
 6
 The district court also rejected plaintiff's contention that disqualification of the plaintiff would cause undue hardship to the community. The district court found inadmissible a survey submitted by plaintiff which indicated that disqualification would cause inconvenience to plaintiff's customers. The court further concluded that even if the survey were admissible, the actions of the FNS disqualifying plaintiff complied with FNS regulations and gave full consideration to the factors relating to the effects of a three-year disqualification to the surrounding community. Thus, the district court granted the FNS' motion for summary judgment, and the instant appeal ensued.
 
 II.
 A. Prior Notification
 
 7
 Plaintiff argues that the imposition by FNS of a three-year disqualification violated its own regulations because it did not warn plaintiff of the possibility that violations were occurring at the store. The FNS' determination of the sanction to be applied to one who violates the Act "is subject to very limited judicial review." Woodard v. United States, 725 F.2d 1072, 1077 (6th Cir.1984); see Broad Street Food Market, Inc. v. United States, 720 F.2d 217, 220 (1st Cir.1983); Kulkin v. Bergland, 626 F.2d 181, 184 (1st Cir.1980). The FNS' "choice of sanction is not to be overturned unless the reviewing court determines it is ' "unwarranted in law ... or without justification in fact...." ' " Kulkin, 626 F.2d at 184 (quoting Butz v. Glover Livestock Commission Co., 411 U.S. 182, 185-86 (1973)); see also Woodard, 725 F.2d at 1077; Broad Street Food Market, 720 F.2d at 220.
 
 
 8
 The FNS has promulgated regulations governing disqualification of retail food stores for food stamp violations. The FNS shall disqualify a store for three years if it is the firm's practice to sell expensive or conspicuous nonfood items or cartons of cigarettes in exchange for food coupons. 7 C.F.R. Secs. 278.6(e)(3)(ii), 278.6(e)(2)(i). A " 'firm's practice' means the usual manner in which personnel of a firm or store accept food coupons as shown by the actions of the personnel at the time of the investigation." 7 C.F.R. Sec. 271.2. Where a firm's practice is established, there is no requirement that the FNS advise the store prior to disqualification of the possibility that violations were occurring and of the possible consequences of violating the regulations. 7 C.F.R. Sec. 278.6(e)(3)(ii).
 
 
 9
 The FNS has also established guidelines which serve as an interpretative aid in construing these regulations. Woodard, 725 F.2d at 1076. FNS Guidelines 744-9(V)(D) and 744-9(V)(C) authorize a three-year disqualification where it is the firm's practice to sell major ineligible items in exchange for food stamps, and the FNS has not warned the firm of the possibility that violations were occurring and of the possible consequences of violating the regulations. FNS Guideline 744-9(V) further provides that a "firm's practice" may be established by "at least three transactions involving major ineligible items."
 
 
 10
 However, the FNS Guidelines do not contemplate that a store will be disqualified as a result of its first violation "unless there are special circumstances relating to the violation." Bruno's, Inc. v. United States, 624 F.2d 592, 594 (5th Cir.1980). In determining whether disqualification is warranted, the FNS may consider a number of factors, including whether the illegal sales were inadvertent or deliberate. FNS Guideline 744-9(IV)(B)(3) provides that violations of the regulations will be considered deliberate where two or more clerks have, without refusal, taken an active part in four clearly violative transactions involving ineligible items. FNS Guideline 744-9(IV)(B)(3) further provides that "[l]ack of consistent refusal by two or more clerks will be considered violative action" only if "the firm [has] been advised of the possibility of violations occurring and the consequences of such violations."
 
 
 11
 The FNS regulations and guidelines clearly authorize a three-year disqualification without prior notification of the possibility of violations occurring where it is the firm's practice to sell major ineligible items and two or more clerks have, without refusal, taken part in four violative transactions. Plaintiff's employees, on three separate occasions, accepted food coupons for major ineligible items and, on four separate occasions, accepted food coupons for common ineligible items. Moreover, plaintiff's employees accepted food coupons for these ineligible items without any refusals. Thus, the violations were properly categorized as deliberate, a firm's practice was established, and no warning letter was required for imposition of the three-year disqualification period.
 
 
 12
 Plaintiff's reliance on Bertrand v. United States, 726 F.2d 518 (9th Cir.1984), is seriously misplaced. The sanction reviewed in Bertrand was imposed pursuant to 7 C.F.R. Sec. 278.6(e)(2), which, at that time, provided for disqualification upon a showing that it was store policy to sell expensive or conspicuous nonfood items. The court relied on FNS Guideline 744-9(III)(B)(1) which, at that time, provided that violations could be attributed to store policy when:
 
 
 13
 any or all of the following persons took an active part in the violations:
 
 
 14
 * * *
 
 
 15
 c. Two or more clerks who sell common grocery-type or major nongrocery-type ineligible items without refusal during the course of the investigation when there is a record of previous compliance action which documents that the owner or appropriate store official had been cautioned about the possibility of violations occurring in the store and the consequence of being found violating.
 
 
 16
 726 F.2d at 521 (emphasis added). Unlike FNS Guideline 744-9(III)(B)(1), FNS Guideline 744-9(IV)(B)(3) requires that the FNS issue a warning of possible violations only when store clerks have not consistently accepted coupons for ineligible items.
 
 B. Hardship to the Community
 
 17
 Plaintiff argues that a civil penalty, rather than disqualification, was appropriate because disqualification would result in undue hardship to the community. Under agency regulations,
 
 
 18
 [the] FNS may impose a civil money penalty as a sanction in lieu of disqualification only when the firm subject to a disqualification is selling a substantial variety of staple food items, and the firm's disqualification would cause hardship to food stamp households because there is no other authorized retail food store in the area selling as large a variety of staple food items at comparable prices.
 
 
 19
 7 C.F.R. Sec. 278.6(f). The FNS determined that plaintiff's disqualification would not cause hardship to food stamp households since there are two other retail food stores in the area selling a larger variety of staple food items at lower prices. A decision whether to impose a civil money penalty is a matter of administrative discretion and may not be overturned unless it is unwarranted in law or without justification in fact. Broad Street Food Market, 720 F.2d at 220; Woodard, 725 F.2d at 1078.
 
 
 20
 Plaintiff relies on a survey, conducted after the FNS determination, of its customers concerning their attitude toward the store. The district court found the survey inadmissible under Fed.R.Civ.P. 56(e) which provides that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." The district court noted that there was no evidence establishing the survey author's qualifications to conduct the survey or draw conclusions from the data, or any evidence explaining the procedure used or proof that the sample used was representative of the population at issue.
 
 
 21
 Plaintiff does not challenge the district court's ruling on the admissibility of the survey, stating only that "[a] party may bring in new evidence at the district court level to maintain its challenge of the FNS action, McCray v. United States, 511 F.Supp. 205 (E.D.Mich.1981); J.L. Saunders [Inc.] v. United States, 52 F.R.D. 570 (E.D.Va.1971)." Both McCray and Saunders involve presentation of new evidence challenged in the finding of a violation. McCray, 511 F.Supp. at 207; Saunders, 52 F.R.D. at 573. It is, however, inappropriate to present new evidence on the question of hardship. Broad Street Food Market, 720 F.2d at 220-21; see also Woodard, 725 F.2d at 1078.
 
 
 22
 Plaintiff also relies on Nick Qasem's affidavit, wherein he stated that his store would not survive any significant period of disqualification, and the closing of the store would result in severe inconvenience to many of his customers. Qasem's affidavit was not presented to the FNS and could not be considered by the district court. Broad Street Food Market, 720 F.2d at 221. Moreover, serious financial hardship to plaintiff is not a relevant factor in this analysis. Woodard, 725 F.2d at 1078. Thus, there is no basis to conclude that the decision of FNS to impose disqualification rather than a civil money penalty is unwarranted in law or without justification in fact.
 
 III.
 
 23
 Accordingly, the judgment of the district court is AFFIRMED.
 
 
 24
 MERRITT, Circuit Judge, concurring.
 
 
 25
 The principal issue in this case is whether on the facts presented a warning is required prior to the three-year disqualification from the food stamp program. The applicable Food and Nutrition Service regulations contemplate that three-year disqualifications can result where there has been no prior notice. 7 C.F.R. 278.6(e)(3)(ii); 7 C.F.R. 278.6(e)(2)(i). Furthermore, one provision in the agency guidelines states specifically that where the requisite violations have been found, a three-year disqualification can be assigned even though "FNS had not previously advised the firm of the possibility that violations were occurring and of the possible consequences of violating the regulations." FNS Instruction 744-9(V)(D)(2).
 
 
 26
 One section in the guidelines, however, gives us pause on the prior notification issue. Section IV(B) of the guidelines establishes a presumption of "deliberate disregard" of the regulations "when there has been a minimum of four clearly violative transactions involving ineligible items, and any or all of the following persons took an active part in those violations: ... (3) Two or more clerks who sell common or major ineligible items without refusal to sell such items." (emphasis in original.) In my view, the next sentence in Section IV(B)(3) creates the only difficulty in this case: "Lack of consistent refusal by two or more clerks will be considered violative action; however, the case record must include documentation that the owner or an appropriate official of the firm had been advised of the possibility of violations occurring and the consequence of such violations." (emphasis added.)
 
 
 27
 Judge Milburn discusses this language found in Section IV(B)(3) and concludes that "it requires that the FNS issue a warning of possible violations only when store clerks have not consistently accepted coupons for ineligible items." I concur fully in Judge Milburn's interpretation but write separately only to point out that this interpretation is required by reading Section IV(B)(3) in the context of the regulations and guidelines as a whole. Since the regulations and guidelines provide for the possibility of a three-year disqualification without prior notification of violations, Section IV(B)(3) should be read in a manner consistent with these other provisions.