963 F.2d 366
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
LAMEC, INC., Plaintiff, Appellant,
v.
Lamar ALEXANDER, et al., Defendants, Appellees.
 No. 92-1140.
 United States Court of Appeals,
First Circuit.
 June 8, 1992
 
 A. J. Amadeo Murga with whom Antonio J. Amadeo Semidey was on brief for appellant.
 Maria Hortensia Rios Gandara, Assistant United States Attorney, with whom Daniel Lopez Romo, United States Attorney, and Stephen M. Kraut, Counsel, Office of Student Financial Assistance, U.S. Department of Education, were on brief for appellees.
 Before Breyer, Chief Judge, Aldrich and Coffin, Senior Circuit Judges.
 COFFIN, Senior Circuit Judge.
 
 
 1
 This appeal concerns the efforts of appellant Lamec, Inc. (Lamec) to participate in the Pell Grant Program of Title IV of the Higher Education Act of 1965, 20 U.S.C. §§ 1070-1099, which provides financial assistance for students at qualified schools. The district court denied a request for injunctive relief to protect Lamec's participation in the program at several campuses of a trade school that it recently acquired in Mayaguez, Puerto Rico.
 
 
 2
 Lamec challenges adverse rulings on two causes of action. In the first, Lamec seeks a preliminary injunction enjoining the United States Department of Education ("the Secretary") from terminating its eligibility to participate in Title IV programs because of allegedly improper uses of Pell Grant funds and from levying a $450,000 fine resulting from such uses. In the second cause of action, Lamec seeks a mandatory injunction requiring the Secretary to certify two branch campuses as eligible to participate in Title IV programs.
 
 
 3
 After due consideration and perusal of the record, we affirm, with a single exception, the court's judgments on both causes of action. With respect to the court's sub silentio ruling that appellant did not fulfill the requirements for preliminary injunctive relief against the imposition of the $450,000 civil penalty, we simply have no basis for decision on this record and remand to the district court for hearing and an articulated determination.
 
 
 4
 We begin with appellant's first cause of action. The district court noted this claim in its opinion. But after observing that most of the evidence presented at the preliminary injunction hearing had concerned the second cause of action, the court went on to discuss only the second claim. The decision concluded with a blanket denial of the request for relief.
 
 
 5
 In the absence of findings from the court, we confine our review to determining from the record whether it permits any result but affirmance. See In re Rare Coin Galleries of America, Inc., 862 F.2d 896, 900 (1st Cir. 1988). More specifically, the question is whether the court, on this record, could have found that Lamec had demonstrated a likelihood of success in establishing that the Secretary improperly terminated its eligibility. We have no difficulty in concluding that such a finding would lack support.
 
 
 6
 The skeletal facts are the following. After a year of negotiations, Puerto Rico Technology and Beauty College (PR Tech) sold its Mayaguez campus to Lamec on June 30, 1987. Under the accreditation policy of the National Association of Trade and Technical Schools (NATTS), a private accreditation commission, a branch campus that is sold as an independent school must be re-accredited as a "free standing" institution. Lacking such accreditation at the time of sale, Lamec's campus was not eligible for Title IV funding programs. Lamec, however, had assumed that its students would pay their tuition and fees with Title IV funds.
 
 
 7
 Perhaps in anticipation of this problem, a clause was inserted into the sales contract requiring PR Tech to permit Lamec "to use its federal permits and licenses to collect all the federal grants of the enrolled students" pending Lamec's receipt of new permits and licenses. From August 1987 through July 1988, PR Tech used its own Pell Grant eligibility to obtain $403,875 in Title IV funds, which Lamec used to pay itself for the tuition and fees owed by its students.
 
 
 8
 Although Lamec eventually was declared eligible, the Secretary in July 1990 sought to terminate its eligibility and to impose fines on both PR Tech and Lamec. A hearing on the proposed termination was held before an Administrative Law Judge.
 
 
 9
 The relevant legal standards are set forth in two regulations. The first, 34 C.F.R. § 668.82(c), states:
 
 
 10
 An institution's failure to administer the Title IV, HEA programs, or to account for the funds it receives under those programs, in accordance with the highest standard of care and diligence required of a fiduciary, constitutes grounds for a fine, or the suspension, limitation or termination of the eligibility of the institution to participate in those programs.
 
 
 11
 The second, 34 C.F.R. § 600.31, formerly § 668.18 (1987), provides:
 
 
 12
 (a) An eligible institution, or a previously eligible institution that participated in any HEA program, that changes ownership resulting in a change of control is not considered by the Secretary to be the same institution....
 
 
 13
 * * *
 
 
 14
 (c) For the purposes of this part, a change in ownership of an institution that results in a change of control means any action by which a person or corporation obtains new authority to control the actions of that institution. That action may include, but is not limited to--
 
 
 15
 (1) The sale of the institution;
 
 The ALJ found the following:
 
 16
 The terms of the contract [of sale] appear to be fulfilled in that the money passed from buyer to seller. The parties acknowledged to the Puerto Rico Department of Education a change of ownership. While it is true PR Tech continued to double check to see if all federal funds were being managed properly, the day to day operation seems to have been transferred to Lamec. The testimony is clear; the parties believed the employees of Mayaguez to be the employees of Lamec.
 
 
 17
 These findings would seem to have dictated a conclusion that, within the meaning of § 668.18(c), there had been a change of ownership. But the ALJ then considered the effect of a Puerto Rico regulation which, in the absence of a new owner's signing of certain guarantees, provided that "the previous owners will continue guaranteeing jointly the commitments made as if no transfer of ownership had taken place." The ALJ, ignoring the "as if" clause, interpreted this reservation of responsibility under Puerto Rican law into a negation of transfer of ownership under federal law. This is a clear lapse in logic, a non-sequitur. The Secretary correctly held, reversing the ALJ's decision, "Clearly, Lamec obtained authority to control the actions of the Mayaguez school."
 
 
 18
 We therefore hold that on this record the district court could not have found that appellant had demonstrated a likelihood of success in its effort to overturn the Secretary's holding that "a 'change of ownership' did occur as a direct and immediate result of the June 30, 1987 transaction." We make the same determination as to appellant's effort to overturn the Secretary's termination of Lamec's eligibility to participate in the Title IV program. Given this record and the ALJ's fact findings, the only possible conclusion is that Lamec violated the regulations. As to termination, there are no specific limiting standards, and nothing to indicate an arbitrary or capricious decision.[1]
 
 
 19
 We find ourselves in quite a different position in reviewing the assessment of the $450,000 fine. In the first place, the Secretary did not direct any specific reasoning to this decision, noting only that some eighteen illegal transfers of funds were involved in the relevant fourteen-month period; that Lamec bore some responsibility for PR Tech's receipt of the Title IV funds; and that Lamec (as well as PR Tech) had falsely represented that the final sales contract had been executed later than the actual date, i.e., January 29, 1988, rather than June 30, 1987. The district court, as we have noted, did not address this issue.
 
 
 20
 The authority of the Secretary to impose a civil monetary penalty is not entirely without limits. In determining the amount of a monetary penalty, the Secretary is required to consider "the appropriateness of the penalty to the size of the institution of higher education subject to the determination, and the gravity of the violation, failure, or misrepresentation...." 20 U.S.C. § 1094(c)(2)(B)(ii). The maximum penalty for any single violation is $25,000. 20 U.S.C. § 1094(c)(2)(B)(i). In this case the Secretary not only chose the more severe eligibility sanction-termination, rather than suspension-but also assessed the uttermost monetary sanction available for each of the eighteen fund transfers. In other words, the Secretary administered to Lamec the maximum possible fine without any explanatory comment.
 
 
 21
 The government appropriately reminds us of our own statement that " '[a]n agency's choice of sanction is not to be overturned unless the reviewing court determines it is "unwarranted in law ... or without justification in fact...." ' " Broad Street Food Market, Inc. v. United States, 720 F.2d 217, 220 (1st Cir. 1983) (quoting Kulkin v. Bergland, 626 F.2d 181, 184 (1st Cir. 1980) (quoting Butz v. Glover Livestock Comm'n Co., 411 U.S. 182, 185-86 (1973))). Our problem is that while the maximum sanction is warranted in law, we have no way of telling whether it is justified in fact.
 
 
 22
 In saying this, we have in mind the ALJ's findings of fact.[2] In discussing whether PR Tech or Lamec had violated the duty of exercising "the highest standard of care," the ALJ concluded:
 
 
 23
 There is no evidence that the funds transferred on the 18 occasions in question were misappropriated, misused, or otherwise misapplied. No evidence is available to refute statements from both PR Tech and Lamec which show the funds being used for the intended purpose-the education of the students at the Mayaguez school.
 
 
 24
 These conclusions are at odds with the Secretary's determination that Lamec's violations warranted the maximum fine. Without explanation from the Secretary or findings from the district court, we are unable to review whether the assessment was proper under the statute. Accordingly, we must remand for the district court's determination on the propriety of such a substantial fine.* * *
 
 
 25
 We approach the district court's decision on appellant's second cause of action, seeking to compel the Secretary to certify Lamec's two new branch campuses as eligible to participate in Title IV programs, with the benefit of both hearing and a reasoned decision. The history of the effort to certify these two branch campuses is one of misadventure at every turn: first, an application form that was confined to only one of the campuses; then, after the second form had been submitted, a discovery that licenses from the Puerto Rico Department of Education had to be obtained; then, several months later, a limited grant of eligibility to teach only cosmetology and sewing; a continually frustrating and attenuated effort to obtain NATTS accreditation for several additional courses; one report of satisfactory progress forwarded in Spanish, only to result in a request for a report in English; then a request for an audit, which resulted in unsatisfactory information confined to cash flow; finally, another audit report. The Secretary received this last piece of information on September 5, 1991. A month later, the main campus was terminated, removing the underpinning for any certification of the two branches.
 
 
 26
 Appellant portrays the above unhappy sequence of events as evidencing either bureaucratic stupidity and sluggishness or, worse, malevolent scheming. But the matter has been thoroughly considered by the district court. It was entitled to credit the Department of Education for good faith efforts and to lay the blame for delay on appellant. Although it could be argued that certification should have occurred after the final piece of information was provided on September 5, we note that the representations in the final report had to be carefully verified. We cannot conclude that the existence of a mere possibility of faster processing, particularly with the impending termination of the mother institution, gives appellant a likelihood of success.
 
 
 27
 Accordingly, we take the following actions: (1) affirm the denial of Lamec's request for an injunction suspending termination of its eligibility for Title IV funding; (2) affirm denial of its request for an injunction compelling certification of the branch campuses, and (3) vacate the judgment denying an injunction enjoining assessment of a civil monetary penalty in the amount of $450,000, remanding that issue to the district court for further consideration and an articulated determination.
 
 
 28
 Affirmed in part, vacated and remanded in part. No costs.
 
 
 
 [1]
 The Secretary determined that termination was appropriate based on the "change of ownership" and the consequent violation of Title IV regulations when PR Tech transferred funds to Lamec. See 34 C.F.R. § 668.4 (1987) (institution receiving funds must have state licensing and accreditation); 34 C.F.R. § 668.11 (1987) (institution receiving funds must enter participation agreement with Department of Education). See also 34 C.F.R. § 668.86 (1991) (Secretary may terminate eligibility if institution violates any provision of Title IV or any regulation implementing it)
 Additionally, however, the Secretary found that the two institutions violated their fiduciary duties to act "in accordance with the highest standard of care and diligence" toward the Title IV program, see 34 C.F.R. § 668.82, and concluded that their "acts and omissions[ ] considered alone would be sufficient to justify the termination of PR Tech and Lamec."
 
 
 [2]
 As we have noted, these findings do not justify the conclusion reached by the ALJ on the termination issue. They nevertheless strike us as relevant to a determination of an appropriate fine
 
 
 [3]
 We were told at oral argument that the Secretary had suggested a remand to enable the district court to make specific findings on the first cause of action