47 F.3d 1167
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
CONVENIENT FOOD MART, INC., NO. 3-107, Plaintiff-Appellant,
v.
UNITED STATES of America, Defendant-Appellee.
 No. 93-4189.
 United States Court of Appeals, Sixth Circuit.
 Jan. 10, 1995.
 
 Before: KENNEDY, CONTIE and SUHRHEINRICH, Circuit Judges.
 PER CURIAM.
 
 
 1
 The Food and Nutrition Service ("FNS") found that plaintiff, Convenient Food Mart, had trafficked in food stamps and, consequently, permanently disqualified the store from participating in the food stamp program. Plaintiff filed suit in the District Court seeking judicial review of the FNS' decision. The District Court affirmed, and plaintiff now appeals. We affirm.
 
 I.
 
 2
 Dave Dlugos, an investigator for the FNS, received a tip from his investigative aide that an employee named "Sam" at Convenient Food Mart was trafficking in food stamps. After obtaining approval from his superiors, the investigator conducted two controlled sales at Convenient Food Mart, using the aide both times.
 
 
 3
 On July 21, 1992, Dlugos and the aide, Terry Harris, drove to the store. Dlugos parked at the side of the store, leaving himself a clear view of the store's front door. Dlugos then instructed Harris to empty his pockets. After ascertaining that Harris' pockets were empty, Dlugos gave Harris $110 in food stamps. Harris entered the store and returned shortly with $61 in cash and no food stamps. Harris informed Dlugos that an employee named "Sam" had exchanged the food stamps for cash. Dlugos recorded this information on a transaction report, which was signed by both himself and Harris. The report also contains a section entitled "description of clerk." This section describes the clerk as an Arab male, 40 years old, five foot seven inches tall, weighing 140 pounds, with black hair.
 
 
 4
 Dlugos and Harris repeated this procedure on August 4, 1992, although this time Harris entered the store with $105 in food stamps and returned with $60 in cash. Harris again stated that Sam had exchanged the food stamps for cash. Dlugos completed a second transaction report, which both he and Harris signed. The "description of clerk" section of this report refers to the description in the prior report.
 
 
 5
 Based on these two reports, the FNS concluded that Sam, who was actually the owner of the store, had engaged in food stamp trafficking. Consequently, it permanently disqualified the store from participating in the food stamp program. Plaintiff appealed this determination to the District Court, which conducted a bench trial.
 
 
 6
 The government's evidence at trial consisted primarily of Dlugos' testimony and the transaction reports. By the time of trial, Harris had moved to Alabama and thus did not testify. Plaintiff's evidence consisted primarily of Hessam "Sam" Lahoud's testimony, in which he denied the government's allegations. The District Court affirmed the decision of the FNS, and plaintiff now appeals.
 
 II.
 A. Admission of Transaction Reports
 
 7
 The court did not identify the rule under which it was admitting the transaction reports. The appropriate rule would appear to be Fed.R.Evid. 803(8) as a report of "matters observed pursuant to duty imposed by law as to which matters there was a duty to report."[1] While plaintiff does not challenge the propriety of this action, it does challenge the weight the District Court gave to these documents. According to plaintiff, the District Court should not have used the reports as proof that the violations listed in the reports actually occurred, especially when Harris was not available for cross-examination.
 
 
 8
 Dlugos' testimony of his own observations is sufficient circumstantial evidence to support a conclusion that someone in the store was trafficking in food stamps. The objective "description of clerk" section of the response is sufficient to identify plaintiff as the trafficker. The only other clerk in the store at the time of the incidents was female. We thus do not need to reach the question of the admissibility of the other portions of the report, particularly the narrative sections recounting the conversation between Dlugos and Harris.[2]
 
 
 9
 The principal evidence plaintiff introduced to rebut the information in the report was his own self-serving testimony. Although the former owner of the store testified that he had had many unpleasant experiences with a Terry Harris, the District Court made no credibility finding regarding the testimony, probably because there was no ground stated for objection to the admissibility of the reports and therefore no request to weigh their truthfulness under the last clause of section 803(8). The District Court had the opportunity to observe plaintiff's demeanor and hear the testimony and obviously did not find plaintiff credible. We cannot say that this conclusion was clearly erroneous.
 
 B. Harris' Unavailability
 
 10
 Plaintiff also argues that its due process rights were violated because Harris was unavailable for cross-examination. For reasons stated above, this argument has no merit.
 
 III.
 
 11
 We AFFIRM the judgment of the District Court.
 
 
 12
 CONTIE, Circuit Judge, dissenting.
 
 
 13
 I cannot agree with the majority's conclusion. I do not think there was sufficient evidence for disqualification from the Food Stamp Program based on the "description of clerk" sections of the transaction reports for the following reasons.
 
 
 14
 Although the district court did not identify the rule under which it was admitting the transaction reports, it is clear that the United States offered the reports as a business record exception to the hearsay rule pursuant to Fed.R.Evid. 803(6). In order to lay a foundation for their admission, the United States sought to establish that the reports were prepared in the ordinary course of business and that it was Dlugos' regular practice to prepare such documents, tracking the language of Fed.R.Evid. 803(6). Joint Appendix, pp. 204-05.
 
 
 15
 I disagree with the majority that the appropriate rule for admission of the reports is Fed.R.Evid. 803(8). This rule perhaps would be appropriate if Dlugos were unavailable to testify about the reports' factual findings, which he observed--the fact that he gave Harris food stamps before Harris entered the store and Harris returned with money. However, Dlugos, the public official who prepared the report, was available to testify, and, therefore, I do not believe that Rule 803(8) applies. As the court in Moss v. Ole South Real Estate, Inc., 933 F.2d 1300, 1305 (5th Cir.1991) pointed out, Rule 803(8) "is premised on the assumption that public officials perform their duties properly without motive or interest other than to submit accurate and fair reports." The hearsay statements contested are those attributed to Harris, and Harris is not a public official, nor did he prepare the reports. It is the hearsay descriptions of what Harris witnessed in the store, not Dlugos' factual observations, that plaintiff is contesting as inadmissible. As the court in United States v. D'Anjou, 16 F.2d 604, 610 (4th Cir.), cert. denied, 114 S.Ct. 2754 (1994) held, statements taken from witnesses during an investigation, which may be contained in an official report, are not the type of "factual findings" that may be admitted under Rule 803(8) because they have none of the indicia of reliability or trustworthiness that are the foundation for this exception to the hearsay rule. Moreover, the rule itself states that in civil actions, official reports may be admitted "unless the sources of information [on which they are based] indicate lack of trustworthiness." Fed.R.Evid. 803(8)(C). In the present case, plaintiff is arguing that Harris (who was the source of information about what occurred inside the store) lacks trustworthiness, an issue which I believe must be addressed. The district court noted plaintiff's objection to the admission of the reports without asking on what specific grounds he objected, but plaintiff's objection occurred within the context of the discussion about the requirements of Rule 803(6). Given the fact that plaintiff objected, I believe it was incumbent upon the district court to consider whether the reports fell within this exception to the hearsay rule.
 
 
 16
 Because both the briefs of plaintiff-appellant and defendant-appellee assume the reports were admitted under Fed.R.Evid. 803(6), I will address the arguments raised in this regard. Although plaintiff did not challenge the propriety of admitting the reports, he did challenge the admission of the hearsay statements of Dlugos describing what Harris had told him, which the reports contained. First, I believe that these hearsay statements do not fall under the business records exception to the hearsay rule, Fed.R.Evid. 803(6), because the reports were prepared in anticipation of litigation in the sense that they formed the basis for an adversary proceeding. See Palmer v. Hoffman, 318 U.S. 109 (1943); United States v. Blackburn, 992 F.2d 666 (7th Cir.), cert. denied, 114 S.Ct. 393 (1993). Therefore, I believe the court erred in relying on these hearsay statements to determine that the alleged transactions between Harris and plaintiff inside the store occurred as stated. See Saunders v. United States, 507 F.2d 33 (6th Cir.1974) (five unsworn statements of persons who claimed they had purchased ineligible items in exchange for food stamps at the appellant's store insufficient to grant summary judgment in favor of the United States' disqualification of the store from participating in the Food Stamp Program). See also Tashnizi v. INS, 585 F.2d 781 (5th Cir.1978); McGray v. United States, 511 F.Supp. 205 (E.D.Mich.1981).[1] I do not believe the "description of clerk" sections of the reports are sufficient evidence because they are inadmissible hearsay. Moreover, portions of the reports' narrative sections recounting the conversations between Dlugos and Harris were inconsistent with Dlugos' testimony before the district court.
 
 
 17
 Second, contrary to the statement made by the majority indicating only plaintiff and a female clerk were in the store, the record does not indicate the number of people or clerks in the store at the times of the alleged violations. Also Dlugos did not ascertain that Harris' pockets were empty by checking them; Dlugos merely asked Harris to empty his pockets.
 
 
 18
 Third, the majority states that the principal evidence plaintiff introduced to rebut the information in the reports was his own self-serving testimony. However, this is not the case as plaintiff also introduced the testimony of the former store owner, who testified that Terry Harris was the name of a person who had been banned from the store for passing bad checks and shoplifting, indicating a motive for Harris to try to "get back" at the store by having it disqualified from the Food Stamp Program. Plaintiff also introduced testimony indicating that the gross sale of food purchased by food stamps at the store had been consistent for many years.
 
 
 19
 Finally, I believe that to hold that unsworn hearsay statements in what is the equivalent of a police report are sufficient evidence for identifying a person is a dangerous precedent for civil litigation, for example, in litigation involving traffic accidents. Such a precedent in the context of a criminal case would deny the accused the ability to confront the witnesses against him in violation of the Sixth Amendment.
 
 
 
 [1]
 At oral argument, a dispute emerged as to whether the District Court had actually admitted Exhibit B, the August 4 transaction report, into evidence. At one point in the hearing the court stated that Exhibit B was received. (Joint App. at 205). Later, however, the judge said that since he had not yet heard testimony about the August 4 date, he would only admit Exhibit A, the first report. (Joint App. at 206). The court then proceeded to hear testimony regarding the events of August 4, but never returned to the issue of admitting Exhibit B. A review of both parties' proposed findings of fact and of the District Court's opinion, however, reveal that they all treated Exhibit B as if it had been admitted. In any event, Dlugos' testimony and the first transaction report are sufficient to support the District Court's conclusion. Thus, we do not need to reach this issue
 
 
 [2]
 We do note that the Tenth Circuit has addressed and rejected plaintiff's arguments. See Haskell v. U.S. Dept. Agriculture, 930 F.2d 816 (10th Cir.1991). In that case, the district court had granted summary judgment in favor of the defendant on the basis of transaction reports very similar to those in the case at bar. The plaintiff challenged the admissibility of the reports, especially in light of the unavailability of the investigative aide, who had been killed in a car accident prior to the initiation of the court proceedings. In rejecting the plaintiff's arguments, the Tenth Circuit stated, "even if due process entitles Haskell to cross-examine adverse witnesses, Haskell's inability to cross-examine the aide is not fatal to the admission of the transaction report." Id. at 820; cf. Ohio v. Roberts, 448 U.S. 56 (1980) (A literal interpretation of the Confrontation "Clause would abrogate virtually every hearsay exception, a result long rejected as unintended and too extreme.")
 
 
 [1]
 I do not believe that Haskell v. U.S. Dept. of Agriculture, 930 F.2d 816 (10th Cir.1991) applies, because it is factually distinguishable